<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| HAROLD M. HOFFMAN, individually and on behalf of those similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Civ. No. 14-01838 (SRC)** |
| v. | : | |
| | : | <u>**OPINION**</u> |
| LIQUID HEALTH INC., and ALEX ABREU, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

---

<u>**CHESLER,**</u> District Judge

This matter comes before the Court upon the motions filed by Defendants Liquid Health Inc. and Alex Abreu ("Liquid Health" and "Abreu" and, collectively, "Defendants"). Abreu moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure (12)(b)(2). [Docket Entry 14]. Liquid Health moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). [Docket Entry 12]. Plaintiff *pro se* Harold M. Hoffman ("Plaintiff") has opposed [Docket Entries 18 & 19], and the Court has opted to rule on the papers submitted, and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons detailed below, this Court grants Abreu's motion to dismiss for lack of personal jurisdiction, and grants in part and denies in part Liquid Health's motion for judgment on the pleadings.[1]

---

[1] The Court notes that Abreu also argues that the Complaint fails to state a claim against him and must therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6). Because the Court can dispose of the claims against Abreu on jurisdictional grounds, it need not address this alternative argument.

**BACKGROUND**

The class action Complaint, which alleges violations of the New Jersey Consumer Fraud Act, common law fraud, and unjust enrichment, was originally filed in state court and removed to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Plaintiff claims that Liquid Health and its officer, Abreu, advertised a dietary supplement for dogs, known as K9 Glucosamine, while misrepresenting the product's ingredients.  The company advertised that the product contained 1,200 mg of chondroitin sulfate ("Chrondroitin") per ounce, an ingredient that maintains the health and resiliency of a dog's joints and connective tissues.[2] Plaintiff asserts that according to an "independent, reliable, laboratory analysis, each fluid ounce of Defendants' K9 Glucosamine contains only 16% of the claimed and promised concentration of Chondroitin."  (Complaint at 2).  Plaintiff claims that he "read, saw, and/or heard Defendants' advertising" before he purchased thirty-two ounces of the product for forty dollars in January 2004.  (Complaint at 2).  He states that he used the product for his dog for over one month and alleged that the product "delivered no benefit."  (Complaint at 2).

Shortly after removal, Plaintiff submitted a letter questioning subject matter jurisdiction, and moved for class certification.  On April 4, 2014, this Court dismissed Plaintiff's motion for class certification without prejudice, to give Defendants an opportunity to obtain discovery.  *See* ECF No. 10.  On April 11, 2014, Defendants filed the instant motions.

---

[2] Plaintiff alleges, in most of his complaint, that Liquid Health advertised that its product contained 1,200 mg of Chondroitin per fluid ounce.  (Complaint at 2, 5).  In one paragraph of the complaint, however, Plaintiff states that the company advertised that the product contained 1,600 mg of Chondroitin per ounce.  (Complaint at 4).  The Court assumes that Plaintiff made a typographical error and the company advertised that the product contained 1,200 mg of Chondroitin.

## DISCUSSION

### I.      Abreu's Motion to Dismiss for Lack of Personal Jurisdiction

Abreu moves to dismiss the claims against him for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  He argues that in contrast to Plaintiff's claims, he is not an officer or director at Liquid Health, but simply the company's web designer. Furthermore, Abreu argues that he lives in California and has never been to New Jersey, does not own, use, lease, or possess any real property in New Jersey, has never paid taxes in New Jersey, does not have a bank account or any other known assets in New Jersey, and has never worked in New Jersey.  (ECF No. 14-1, at 6).

The Federal Rules of Civil Procedure provide that a district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under state law.  Fed. R. Civ. P. 4(k)(1).  A district court exercising diversity jurisdiction over a case must, therefore, look to the forum state's long-arm statute in analyzing whether there is personal jurisdiction over a non-resident defendant.  *Sunbelt Corp. v. Noble, Denton & Assocs.,* 5 F.3d 28, 31 (3d Cir. 1993). New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the fullest limits of due process."  *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998).  The Fourteenth Amendment's Due Process Clause requires that the defendant "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Control Screening LLC v. Technological Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted).  Where, as here, a defendant has raised the defense of lack of personal jurisdiction, "the plaintiff bears the burden to prove, by a preponderance of evidence, facts

3

sufficient to establish personal jurisdiction." *Carteret Sav. Bank, F.A. v. Shushan,* 954 F.2d 141, 146 (3d Cir. 1992) (citing *Time Share Vacation v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 65 (3d Cir. 1984)).

Personal jurisdiction may be exercised under either a general or specific jurisdiction theory. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir. 2001). A court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). To establish general jurisdiction the plaintiff must show that the defendant has "significantly more than mere minimum contacts" with the forum state. *Provident Nat'l Bank v. Cal. Fedv Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987). Therefore, "general jurisdiction requires a 'very high threshold of business activity.'" *Ameripay, LLC v. Ameripay Payroll. Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. America,* 651 F.2d 877, 892 n.2 (3d Cir. 1981) (finding that a "daily presence" in the forum and activities such as weekly advertising, regular solicitation of business, substantial product sales, and the maintenance of a telephone number in the forum meet the threshold). The facts required to establish general jurisdiction must be "extensive and persuasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir. 1982).

Specific jurisdiction, on the other hand, is invoked when a claim is related to or arises of out the defendant's contacts with the forum. *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.,* 746 F.2d 208, 211 (3d Cir. 1984). A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (citations omitted). The plaintiff must prove that (1) the defendant purposefully directed

his activities at the forum; (2) the litigation arises out of or relates to at least one of those contacts; and (3) the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

In light of these well-established standards, this Court finds that it lacks general jurisdiction over Abreu. Although Plaintiff suggests that Abreu was more than just a web designer, Plaintiff lacks "extensive and persuasive" evidence that Abreu has reached the high threshold of conducting business in New Jersey to establish general jurisdiction. In Plaintiff's response brief, Plaintiff argues that Abreu owns Liquid Health's website and it would be "highly unusual for a corporate entity's domain address, a highly valuable corporate asset, to be owned by an employee." (ECF No. 19, at 2). Plaintiff also states that that the corporate defendant's registered agent for service of process is someone with the last name Abreu and that "[i]t would seem highly unusual for a corporation to designate as its registered agent an apparent family member of its 'web designer.'" (ECF No. 19, at 2).

Even taking these assertions at face value, they lend little credence to Plaintiff's argument that this Court can exercise jurisdiction over Abreu consistent with due process. The fact that Abreu owns the company's website is not persuasive evidence that Abreu controls the business operations of Liquid Health. Similarly, the fact that Abreu has the same last name as the company's registered agent for service of process is far from extensive evidence of Abreu's business ownership. Plaintiff cites *Allen v. V & A Bros., Inc.*, 208 N.J. 114 (2011), in arguing that owners and employees of corporations can be held individually liable for Consumer Fraud Act violations that are directly attributable to acts undertaken by them through the corporate entity. Nevertheless, that case dealt with individual liability and did not approach the topic of

personal jurisdiction.  "Jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . Each defendant's contacts with the forum State must be assessed individually." *Virginia St. Fidelco, L.L.C. v. Orbis Products Corp.*, CIV.A. 11-2057 (SRC), 2012 WL 3018296, at *1 (D.N.J. July 24, 2012).  Given that Abreu lacks continuous and systematic contacts with New Jersey, this Court lacks general jurisdiction.

Abreu also does not have minimum contacts in New Jersey sufficient to give rise to specific jurisdiction.  Abreu would not have reasonably anticipated being haled into court in New Jersey, considering he owns no property or assets in New Jersey, pays no taxes in New Jersey, and indeed has never been to New Jersey.  Plaintiff does not claim that Abreu has any other connection to New Jersey.  Because the record demonstrates that Abreu has no contacts with the forum state, specific jurisdiction fails under well-worn due process standards.  This Court lacks personal jurisdiction over Abreu and therefore Plaintiff's claims against Abreu are dismissed with prejudice.  Fed R. Civ. P. 12(b)(2).

## II.  Liquid Health's Motion for Judgment on the Pleadings

### A.  Legal Standards

Liquid Health moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Under Rule 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  If the moving party claims, as here, that a complaint fails to state a claim upon which relief may be granted, the court applies the same standards as those applied in a Rule 12(b)(6) motion in its review of a 12(c) motion.  *See Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

A complaint will survive a motion under 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). While the Court must construe the complaint in light most favorable to the plaintiff, it need not accept a "legal conclusion couched as factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, a Plaintiff alleging fraud, including both the common law variety and violation of New Jersey's Consumer Fraud Act ("CFA"), must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *Frederico v. Home Depot,* 507 F.3d 188, 200-03 (3d. Cir. 2007). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As interpreted and applied by the Third Circuit, Rule 9(b) requires "plaintiffs to plead 'the who, what, when, where, and how: the first

paragraph of any newspaper story.'"  *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534 (3d Cir.

1999) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)); *see also Frederico*,

507 F.3d at 200 (holding that Rule 9(b) requires a party alleging fraud to state the circumstances

of the alleged fraud "with sufficient particularity to place the defendant on notice of the 'precise

misconduct with which [it is] charged.'" (internal quotation omitted)).  Rule 9(b)'s requirements

are relaxed in instances where the factual information required to satisfy the rule is solely within

the knowledge of the defendant.  *See In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216

(3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir.

1997)).

### B.    New Jersey CFA Claims

Counts One through Five of Plaintiff's complaint allege that Liquid Health violated the

New Jersey Consumer Fraud Act because the company's product contained only sixteen percent

of the concentration of Chondroitin that the company advertised.  Plaintiff argues that the Liquid

Health misrepresented the product formulation by grossly exaggerating the amount of its key

ingredient.

The CFA was enacted by the New Jersey legislature in 1960 to address rampant

consumer complaints about fraudulent practices in the marketplace and to deter such conduct by

merchants.  *Thiedemann v. Mercedes-Benz USA, LLC,* 183 N.J. 234, 245 (2005) (citing *Furst v.*

*Einstein Moomjy, Inc.,* 182 N.J. 1, 11 (2004)).  In 1971, the CFA was amended to authorize

private actions by injured parties.  *Gennari v. Weichart Co.,* 148 N.J. 582, 604 (1997).  The

amended CFA states: "Any person who suffers an ascertainable loss of moneys or property, real

or personal, as a result of the use or employment by another person of any method, act, or

practice declared unlawful under this act . . . may bring an action or assert a counterclaim

therefore in any court of competent jurisdiction."  N.J.S.A. § 56:8-19.  A CFA plaintiff must

plead three *prima facie* elements: "(1) unlawful conduct by defendant; (2) an ascertainable loss

by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable

loss." *Bosland v. Warnock Dodge, Inc.,* 197 N.J. 543, 557 (2009).

### 1.      Unlawful Conduct

A defendant's unlawful conduct must be made "in connection" with the sale or

advertisement of a product or service, *Castro v. NYT Television,* 370 N.J. Super. 282, 294 (App.

Div. 2004), and must have the "capacity to mislead." *Cox v. Sears Roebuck & Co.,* 138 N.J. 2,

17 (1994) (citing *Fenwick v. Kay Am. Jeep, Inc.,* 72 N.J. 372, 378 (1977)).  There are three types

of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations.

*Vukovich v. Haifa,* No. 03–737(FLW), 2007 WL 655597, at *9 (D.N.J. Feb. 27, 2007).  The CFA

"distinguishes between wrongs committed by affirmative acts and wrongs committed by a failure

to act." *Leon v. Rite Aid Corp.,* 340 N.J. Super. 462, 469 (App. Div. 2001).  If a plaintiff alleges

that the defendant's unlawful act was an omission, the plaintiff must show that the defendant

knowingly concealed a material fact with the intention that the consumer rely on the

concealment.  *Judge v. Blackfin Yacht Corp.,* 357 N.J. Super. 418, 426 (App. Div. 2003)

(internal citation omitted).  In contrast, when a plaintiff alleges, as here, that the defendant's

unlawful act was an affirmative misrepresentation, the plaintiff is not required to show

defendant's intent or even actual deceit or fraud.  *Cox,* 138 N.J. at 17-18; *Leon,* 340 N.J. Super.

at 469.  "One who makes an affirmative misrepresentation is liable even in the absence of

knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." *Gennari,*

148 N.J. at 605.

Plaintiff sufficiently pleads the first prong of the CFA by claiming that Liquid Health misrepresented the amount of Chondroitin contained in the product – a misrepresentation that occurred "in connection" with the sale of the product.  (Complaint at 2).  This misrepresentation had the "capacity to mislead," because Plaintiff purchased the product with the belief that the claimed concentration of Chondroitin would be "effective in maintaining the health and resiliency of a dog's joints and connective tissues."  (Complaint at 5).  Plaintiff need not prove that Liquid Health knew or intended for its affirmative misrepresentation.  Thus, Plaintiff's allegation of the misrepresentation is sufficient to show that Liquid Health committed an unlawful act.[3]

## 2.  Ascertainable Loss

Under the second element of the CFA, a plaintiff must demonstrate an "ascertainable loss," defined as "a cognizable and calculable claim of loss due to the alleged CFA violation." *Theidemann,* 183 N.J. at 249.  Ascertainable loss occurs "when a consumer receives less than what was promised."  *Union Ink Co. v. AT &T Corp,* 352 N.J. Super. 617, 646 (App. Div. 2002)*; see also Miller v. Am. Family Publishers,* 284 N.J. Super. 67, 90-91 (Ch. Div. 1995) ("For their money, they received something less than and different from what they reasonably expected in view of defendant's presentations.  This is all that is required to establish ascertainable loss."); *see also Talalai v. Cooper Tire & Rubber* Co., 360 N.J. Super. 547, 564 (Law Div. 2001) ("Whenever a consumer has received something other than what he bargained for, he has

---

[3] Plaintiff adds in his opposition brief that Chondroitin is an "expensive" product subject to manipulation by "unscrupulous merchants"; thus, Liquid Health "can effectively shave [its] product expenses by misrepresenting concentration [sic] of Chondroitin."  (*See* ECF No. 18, at 1 n.1).  Plaintiff does not explain why he believes this assertion is relevant.  To the extent, however, that this statement is to be read as an indication of Liquid Health's motivation to misrepresent the concentration of Chondroitin in K9 Glucosamine, the Court cannot credit it in connection with the instant motion – these sort of "after-the-fact allegations" are of no utility in response to a motion raising a failure to state a claim defense.  *See Frederico*, 507 F.3d at 201.

suffered a loss of money or property. . . .  When the product fails to measure up [to reasonable expectations based on the representations made], the consumer has been injured; he has suffered a loss.  [H]e has lost the benefits of the product which he was led to believe he had purchased."). In cases involving alleged misrepresentations, "either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle." *Theidemann,* 183 N.J. at 248. "The precise amount of loss need not be known, it need only be measurable." *Dzielak v. Whirlpool Corp.*, Civ. No. 12-0089 (KM), 2014 WL 275 8746, at *20 (D.N.J. June 16, 2014) (citing *Talalai,* 360 N.J. Super. at 563); *Thiedemann,* 183 N.J. at 248 (finding implicit in the term "ascertainable" some modicum of measurability or quantity of what was lost due to the defendants' unlawful conduct).

Here, Plaintiff sufficiently pleads an ascertainable loss.  Liquid Health argues that a mere purchase of a product is not enough to show an ascertainable loss under the CFA.  Nevertheless, in cases involving misrepresentation, either an out-of-pocket loss or loss in value is considered an ascertainable loss.  Plaintiff adequately pleads that for the amount of money he spent, he received something far less than and far different from what he reasonably expected because the product contained a minute amount of the advertised ingredient.  Plaintiff provides specific numbers – he paid forty dollars for thirty-two ounces of 1,200 mg of Chondroitin per ounce, when indeed he received only sixteen percent of the Chondroitin promised.  Plaintiff's claims of ascertainable loss would have been insufficient "absent any specific information concerning the price of the Products or the price of any comparable products. . . ." *Lieberson v. Johnson and Johnson Consumer Cos.,* 865 F. Supp. 2d 529, 541 (D.N.J. 2011).   Here, however, Plaintiff includes the price of the product.  Therefore, Plaintiff's ascertainable loss is measurable. *Dzielak*, 2014 WL 275 8746, at *20 (denying motion to dismiss CFA claim where plaintiffs

alleged facts "that would allow the Court to quantify a difference in value"). Plaintiff received a product with a measurable amount less of Chondroitin than what he bargained for, and therefore has suffered an ascertainable loss.

Liquid Health refers to two cases, *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011) and *Solo v. Bed Bath & Beyond, Inc.*, CIV. 06-1908 (SRC), 2007 WL 1237825 (D.N.J. Apr. 26, 2007), to argue that Plaintiff did not experience an ascertainable loss. In *Mason*, the plaintiffs claimed that Coca-Cola violated the CFA because they advertised "Diet Coke with Vitamins and Minerals," misleading consumers to believe that the product was healthy and contained nutritional value. *See* 774 F. Supp. 2d at 703. That case, however, is distinguishable – there, the product's label listed the ingredients and the amount of the ingredients that were indeed contained in the product. *Id.* at 703-04. The court therefore concluded that "[w]hen the plaintiffs purchased Diet Coke Plus, they received a beverage that contained the ingredients listed on its label." *Id.* at 704. Here, the label suggests that the product contained 1,200 mg of Chondroitin per fluid ounce and according to the Complaint, the product only contained sixteen percent of that amount. Plaintiff here purchased a product that did not contain the ingredients listed on the label, unlike the consumers in the *Mason* case.

In *Solo*, the plaintiff claimed that Bed Bath & Beyond violated the CFA because it advertised linens with a thread count of 1000, when the linens actually had a thread count of 492. 2007 WL 1237825, at *3. This Court held that the plaintiff failed to "plead specific facts setting forth and defining the ascertainable loss suffered." *Id.* The plaintiff made "broad and conclusory allegations," by stating in his complaint that "Plaintiff and the proposed Class and Subclass Members have suffered an ascertainable loss in that they purchased linens that were of lower quality and less valuable than the linens they were promised." *Id.* This Court held that

12

plaintiff needed to more specifically estimate how the sheets were of lesser value, "i.e., that the sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase." *Id.* Because a consumer could still use the sheets for their intended purpose, the plaintiff needed to specifically plead how the inaccurate thread count made the linens worth less. Importantly, this court also held that the plaintiff failed to plead that the advertisement of the thread count was the reason why individuals purchased the product. *Id.* at *4.

*Solo* is inapposite for two reasons. First, Plaintiff here adequately alleges how the product purchased was worth less than advertised because the product lacked the concentration of Chondroitin that would make the product effective in strengthening joints and connective tissue. The wide disparity between the amount of Chondroitin listed (1,200 mg per ounce) and the amount that the product actually contained (sixteen percent of 1,200 mg, or 192 mg) makes the product ineffective in a way that the linens were not in *Solo*. By providing numerical detail, the Plaintiff here does not simply assert that the product was "less valuable" but gives a specific estimate of an eighty-four percent loss in efficacy for the money spent, *i.e.*, value. Moreover, unlike the consumers who could still benefit from the product in *Solo* despite the inaccurate thread count, here it is plausible based on the facts alleged that consumers would not be able to use K9 Glucosamine for their pets' benefit with the small amount of Chondroitin that the product allegedly contains.

Furthermore, unlike in *Solo,* the Plaintiff here alleges that he and other consumers bought the product specifically because of advertisements that the product contained 1,200 mg of Chondroitin per ounce. Plaintiff asserts that he and members of the class saw, read, or heard Liquid Health's advertisements and made "purchases from Defendant based upon Defendant's

13

specific claims and representations of product formulation." (Complaint at 7). Liquid Health did not misrepresent peripheral aspects of the product, but misrepresented an ingredient that is central to the product's appeal to consumers. The concentration of Chondroitin is a fundamental reason that people would purchase the product. Given that Plaintiff alleges that K9 Glucosamine is substantially less valuable and in fact ineffective without the listed amount of Chondroitin, this Court finds that Plaintiff plausibly pleads an ascertainable loss.

### 3. Causal Relationship Between the Unlawful Conduct and the Ascertainable Loss

The third element of the CFA requires a plaintiff to show a causal nexus between the defendant's misrepresentation and the loss plaintiffs may have suffered. *Dewey v. Volkswagen AG,* 558 F. Supp. 2d 505, 526 (D.N.J. 2008). The CFA does not require a plaintiff to demonstrate that he actually relied upon the misrepresentation or omission. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) (citing *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, *Inc.*, 192 N.J. 372, 391 (2007)). However, a plaintiff must demonstrate that the ascertainable loss was suffered "as a result of" the defendant's unlawful conduct. N.J.S.A. § 56:8-19. Thus, a CFA class can include persons who "saw the challenged advertisements" and "would not have purchased the [product] but for the challenged advertisements." *Gross v. Johnson Consumer Pharm* ., 303 N.J. Super. 336, 346 (App. Div. 1997).

Here, Plaintiff argues that he and "members of the putative Class relied on Defendant's false claims and misrepresentations and would not have paid as much, if at all, for Defendant's K9 Glucosamine." (Complaint at 5-6). Plaintiff therefore asserts the promised amount of Chondroitin was the but-for cause of his purchase. Liquid Health's argument that "Mr. Hoffman purchased K9 Glucosamine for the sole purpose of filing this pro se, putative class action

lawsuit" is unpersuasive.  The Court assumes the truth of all well-pleaded factual allegations at the motion to dismiss stage, notwithstanding Plaintiff's history as an active litigant.  Here, there is a sufficient causal connection between Liquid Health's affirmative misrepresentation and Plaintiff's ascertainable loss alleged.

### 4.       Liquid Health's Rule 9(b) Arguments

Rule 9(b) is not an impediment to the CFA claims here.  In this Complaint, Plaintiff has indeed pleaded the first paragraph of a newspaper story, including the "who, what, when, where, and how."  Plaintiff provides sufficiently detailed circumstances of the fraud: Liquid Health misrepresented its product's Chondroitin content over six years, inducing consumers across the country to buy the product for forty dollars per thirty-two ounces.  Plaintiff claims that he knows of the misrepresentation from independent laboratory analysis and the fact that the product delivered no benefit to his dog after using it for one month.  (Complaint at 2).[4]  By providing the numerical difference between the label and the amount of ingredients in the product, Plaintiff demonstrates that Liquid Health grossly misrepresented the amount of Chondroitin contained in the product.  In Plaintiff's words, Liquid Health's "labeled promise that each fluid ounce of

---

[4] Liquid Health refers to previous cases in which the court dismissed Mr. Hoffman's class actions because he did not plead that he used the product, did not show how the product gave him less than what was promised, or did not plead that the product was defective.  See Mov. Br. at 12-13; *Hoffman v. Cogent Solutions Group., LLC,* CIV.A. 13-00079 (SDW), 2013 WL 6623890 (D.N.J. Dec. 16, 2013); *Hoffman v. Nutraceutical Corp.*, CIV.A. 12-5803 (ES), 2013 WL 2650611 (D.N.J. June 10, 2013); *Hoffman v. Macy's Inc.*, A-6131-08T3, 2011 WL 6585 (N.J. Super. Ct. App. Div. June 28, 2010); *Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105 (App. Div. Jan. 30, 2009); *Hoffman v. Palo Alto Laboratories, Inc.,*A-3402-07T1, 2009 WL 62947 (N.J. Super. Ct. App. Div. Jan. 12, 2009).  Here, unlike in his previous complaints, Plaintiff asserts that he used the product, claims that the product contains far less of the promised ingredients, and states that the product was ineffective.  Therefore, Liquid Health's argument regarding Plaintiff's previous filings cannot be extended to the instant Complaint.

Defendant's product contains 1,200 mg of chondroitin sulfate is a lie." (ECF No. 22). Liquid Health cannot therefore say that it has no idea what it did that was allegedly fraudulent. While Liquid Health highlights that Plaintiff gives few details about his lab experiment, Plaintiff raises enough specific facts to put Liquid Health on notice of the misconduct alleged. *See Frederico*, 570 F.3d at 200. The Court is unaware of any authority that requires plaintiffs to plead with specificity how they discovered the alleged fraud.

Liquid Health also argues that Plaintiff's claim must be dismissed under Rule 9(b) because the claim is brought against both itself and Abreu, without specifying the unlawful actions of each Defendant. (Mov. Br. at 17). In order to meet the heightened pleading standards of Rule 9(b), "a plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999). Nevertheless, "the requirements of Rule 9(b) may be relaxed where factual information is exclusively within the opposing party's knowledge or control." *Id.* at 511 n.27.

In this case, Plaintiff alleges that Liquid Health grossly misrepresented the amount of a key ingredient in its product. (Complaint at 2). The Court finds such an allegation provides Liquid Health, the entity Defendant, with sufficient notice to satisfy the strictures of Rule 9(b). The Court cannot expect the Plaintiff to know (or plead) details regarding who in that entity mixed Plaintiff's batch of supplement, or who wrote the label that included an allegedly misrepresented description of that supplement's ingredients. A defendant cannot invoke "collectivized allegations" as talisman every time a CFA plaintiff makes fraud allegations regarding more than one defendant. Here, the alleged fraud has been pleaded with particularity as to Defendant Liquid Health, and it cannot be said that the Complaint "vaguely attributes the

alleged fraudulent statements to 'defendants,'" the evil this Court's distaste for generalized allegations aims to address.  *See Naporano*, 79 F. Supp. 2d at 511 (quoting *Eli Lilly v. Roussel Corp.,* 23 F. Supp. 2d 460, 492 (D.N.J. 1999)).

Finally, the Court acknowledges an overarching theme permeating Defendants' briefing – namely, that because Plaintiff has filed numerous other *pro se* consumer fraud cases which have been dismissed, the instant Complaint should be immediately suspect.  (*See, e.g.,* Reply Br. at 2 ("All parties here and this Court know Mr. Hoffman's history as a prolific *pro se* class action plaintiff.")).  The fact that other of Plaintiff's complaints have been insufficiently pleaded, however, has no bearing on whether the instant Complaint passes muster.  This Complaint, like all other lawsuits in federal court, is entitled to an independent evaluation of its merits.  As with all motions to dismiss, the Court is required to analyze the facts pleaded and the reasonable inferences to be drawn therefrom in the context of the governing legal framework.  If Liquid Health is in fact selling its K9 Glucosamine product and misrepresenting the amount of a key ingredient to the degree alleged in the Complaint, Plaintiff was plausibly defrauded under the CFA when he purchased that product.  The Rule 12(c) motion will be denied as to the CFA claims.

### C.    Common Law Fraud

In order to plead a common law fraud claim in New Jersey, a plaintiff must demonstrate "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  *Banco Popular N. Am. v. Gandi,* 184 N.J. 161, 172-73 (2005) (*quoting Gennari,* 148 N.J. at 610).   In comparison to a CFA claim, a common law fraud claim "involves a more onerous standard. . ."  *Rait v. Sears,*

*Roebuck & Co.*, CIV. A. 08-2461 (JLL), 2009 WL 250309, at *5 (D.N.J. Feb. 3, 2009).  A plaintiff alleging a common law fraud claim must demonstrate that the defendant knowingly and intentionally made a misrepresentation, whereas a CFA plaintiff need not plead so.  *Compare Gennari,* 148 N.J. at 605 (holding that a plaintiff can sufficiently plead an affirmative misrepresentation in violation of the CFA without allegations regarding defendant's intent or knowledge), *with Banco Popular,* 184 N.J. at 172-73 (holding that for a common law fraud claim to succeed, the defendant must know of its material misrepresentation and intend that individuals rely on it).

Furthermore, "common law fraud requires proof of reliance while consumer fraud requires only proof of a causal nexus between the concealment of the material fact and the loss." *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, CIV.A. 11-4429 (JLL), 2012 WL 1574301, at *17 (D.N.J. May 3, 2012) (quoting *Zorba Contractors, Inc. v. Housing Authority, City of Newark,* 362 N.J. Super. 124, 139 (App. Div. 2003)), *aff'd*, 525 F. App'x 94 (3d Cir. 2013).  The plaintiff must show actual detrimental reliance on defendant's fraudulent activity.  *See Ross v. Panteris & Panteris, LLP,* CIV. 12-6096 (FSH), 2013 WL 5739145, at *12-13 (D.N.J. Oct. 22, 2013); *Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 590 (D.N.J. 2003) *aff'd*, 137 F. App'x 482 (3d Cir. 2005); *Kaufman v. i-Stat Corp.,* 165 N.J. 94, 109 (2000).

Here, Plaintiff does not adequately plead common law fraud.  Plaintiff simply asserts that Liquid Health "deliberately and knowingly engaged in concealment" without any factual allegations to support such a statement.  (*See* Complaint at 16-17).  Moreover, Plaintiff concludes that Liquid Health intended that the class rely upon the misrepresentation, without pleading more.  (Complaint at 16).  In other words, Plaintiff pleads the "knowledge or belief" and "reasonable reliance" elements of common law fraud in a purely conclusory fashion, with no

facts to substantiate his claims.  These allegations cannot be credited in opposition to Liquid

Health's motion.  *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement.").  Because Plaintiff

offers no additional facts beyond those pleaded in support of his CFA claims, this Court grants

Liquid Health's motion for judgment on the pleadings regarding common law fraud.  *See Dewey*,

558 F. Supp. 2d at 528 (denying motion to dismiss CFA claim but dismissing common law fraud

claim where plaintiffs "offer[ed] no additional facts [regarding common law fraud] beyond those

discussed . . . in the context of [the] CFA claims").  This dismissal will be without prejudice.  *See*

*Phillips*, 515 F.3d at 236 ("if a complaint is vulnerable to a 12(b)(6) dismissal, a district court

must permit a curative amendment, unless an amendment would be inequitable or futile").

### D.    Unjust enrichment

To establish unjust enrichment, "a plaintiff must show both that defendant received a

benefit and that retention of the benefit would be unjust."  *VRG Corp. v. GKN Realty Corp.,* 135

N.J. 539, 554 (1994).  A plaintiff must also allege that he "expected remuneration from the

defendant at the time it performed or conferred a benefit on defendant and that the failure of

remuneration enriched defendant beyond its contractual rights."  *Id.*  Unjust enrichment,

however, "is not an independent theory of liability, but is the basis for a claim of quasi-

contractual liability."  *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733

(D.N.J. 2008) (citing *Nat'l Amusements, Inc. v. N.J. Turnpike Auth.,* 619 A.2d 262, 267 (Law

Div. 1992), *aff'd,* 275 N.J. Super. 134 (App. Div. 1994)).  In fact, "the role of unjust enrichment

in the law of torts is limited for the most part to its use as a justification for other torts such as

fraud or conversion."  *Castro*, 370 N.J. Super. at 299.

Thus, "under New Jersey law, an indirect purchaser cannot succeed on a claim for unjust enrichment." *Weske v. Samsung Elecs. Am., Inc.,* CIV. 2:10-4811 (WJM), 2012 WL 833003, at *7 (D.N.J. Mar. 12, 2012). "When an individual purchases a consumer product from a third-party store and not the manufacturer, the purchaser has not conferred a benefit directly to the manufacturer such that the manufacturer could be found to have been unjustly enriched." *Id.*; *see also Hughes v. Panasonic Consumer Electronics, Co.,* 10-846 SDW, 2011 WL 2976839, at *27 (D.N.J. July 21, 2011) (dismissing unjust enrichment claim on Rule 12(b)(6) motion where plaintiffs in purported class action purchased allegedly defective product from third-party sellers).

Here, an unjust enrichment claim cannot be tacked onto Plaintiff's fraud claim. Plaintiff does not assert that a quasi-contractual relationship exists and therefore a claim for unjust enrichment is not appropriate. Furthermore, Plaintiff does not establish a direct relationship with Liquid Health because Plaintiff does not allege whether he purchased the product directly from Liquid Health or from a third-party seller. Accordingly, this Court grants Liquid Health's motion for judgment on the pleadings regarding unjust enrichment. Because any leave to amend this claim would be futile, the dismissal will be with prejudice. *Phillips*, 515 F.3d at 236.

## CONCLUSION

For all of the foregoing reasons, the Court will grant the motion to dismiss filed by Defendant Alex Abreu and grant in part and deny in part the motion for judgment on the pleadings filed by Defendant Liquid Health Inc. All claims against Abreu are dismissed for lack of personal jurisdiction. The motion for judgment on the pleadings is denied as to the CFA claim, and granted as to the other claims. The common law fraud claim against Liquid Health will be dismissed without prejudice, and the unjust enrichment claim against Liquid Health will

be dismissed with prejudice.  Plaintiff shall have leave to file an Amended Complaint consistent

with this Opinion within thirty (30) days of the date of entry of the accompanying Order.  Should

Plaintiff fail to file an amended pleading in that time, the common law fraud claim will be

dismissed with prejudice.




     s/ Stanley R. Chesler    
     STANLEY R. CHESLER
     United States District Judge


Dated: July 2, 2014